IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NATURE'S LIFE, INC. AND NUTRAMARKS, INC., <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> RENEW LIFE FORMULAS INC., <br><br> Defendant/Counterclaim Plaintiff, <br><br><br> vs. <br><br><br> NATURE'S LIFE, INC., <br><br> Counterclaim Defendant. | ORDER AND MEMORANDUM <br><br><br><br><br> Case No. 2:05cv162 |

This matter comes before the court on a motion for preliminary injunctive relief filed by

Defendant Renew Life Formulas, Inc.  Renew Life seeks to enjoin Plaintiff Nature's Life, Inc.

from using a logo that Renew Life claims infringes upon its trademark.  Because Renew Life has

failed to establish a likelihood of success on the merits of its claims against Nature's Life, and

because the record does not support the conclusion that Renew Life will suffer irreparable harm

absent the issuance of an injunction or that the balance of harms otherwise weighs in favor of granting an injunction, Renew Life's motion is denied.

<u>**Findings of Fact**</u>

Since at least 1974, Nature's Life has continuously used the words NATURE'S LIFE and a sun design as trademarks in connection with the nationwide advertising and sale of a wide range of nutritional supplement products and other health care products, including vitamins, minerals, herbs, soaps, shampoos, skin creams, suntan lotions, as well as a variety of food products.[1]  Plaintiff's original sun design, which it started using in 1974, looked like this:



In 1993, Nature's Life updated its sun design, such that for the last twelve years or so, Nature's Life's sun logo design has looked like this:



_____

[1]  All factual findings are based on the evidence received at the hearing held on November 3, 2005, and materials submitted by the parties.

Over the years, Nature's Life has received four trademark registrations from the United

States Patent and Trademark Office ("PTO") for its NATURE'S LIFE (word-only) mark and its

NATURE's LIFE and sun design trademarks:

| Mark | Registration No. | Date of Registration | Goods Description |
|---|---|---|---|
| NATURE'S LIFE (word only) | 1,753,572 | February 23, 1993 | Dietary food supplements in tablet or powder form |
|  | 1,837,997 | May 31, 1994 | Edible oils |
|  | 1,383,920 | February 25, 1986 | Dietary food supplements in tablet or powder form |
|  | 2,394,915 | October 17, 2000 | Non-medicated skin cream, skin soap, aloe vera shower gel, aloe vera moisturizing skin gel; dietary supplements, nutritional supplements, vitamins and medicated skin cream; edible oils |

The evidence indicates that Nature's Life has expended considerable sums in advertising,

marketing, and promoting its NATURE'S LIFE word mark and sun design mark in the United

States.  As a result, consumers have come to recognize and associate Nature's Life's products

with the words NATURE'S LIFE accompanied by a sun design trademark.

Renew Life also is in the business of selling nutritional supplements.  In approximately

1997, Renew Life adopted the word mark RENEW LIFE and began using its own sun design

3

logo, which consists of a sun containing a representation of a face, as a trademark for its nutritional supplement products.  The design utilized by Renew Life looks like this:



Renew Life's sun design and Nature's Life's sun design have obvious similarities:  both are suns with extending rays, both are yellow in color, and both have a human face represented inside the sun.  In addition, both Nature's Life and Renew Life utilize the word "life" as part of their word marks.

In 2000, Nature's Life sent Renew Life a letter requesting that Renew Life discontinue use of its sun design.  In response, counsel for Renew Life sent a five-page letter dated July 7, 2000, detailing why there was no likelihood of confusion between the parties' respective sun marks.   Specifically, counsel for Renew Life emphasized the effect of the parties' word marks (NATURE'S LIFE versus RENEW LIFE) in dispelling confusion.  Additionally, Renew Life's counsel stated that because "[t]rademarks incorporating suns with human facial features are [] widely used, . . .  [t]he effect of the widespread use of images of the sun has reduced or substantially eliminated the public's reliance on the image of the sun as a source indicator."

4

(Letter to Renew Life from Nature's Life, July 7, 2000 (Exhibit 6 to Declaration of Karl Riedel at 1-2).)  Following the receipt of Renew Life's response, Nature's Life took no further action.

In 2004, Nature's Life contracted with an independent professional illustrator to assist with designing an updated version of its sun logo.  The illustrator had never seen Renew Life's sun design.  Nature's Life's newly updated sun logo design looks like this:



When Renew Life viewed a depiction of Nature's Life's updated sun logo on a banner at a trade show, Renew Life expressed concerns about the appearance of the updated design and suggested that the new design infringed upon its own trademark.

Nature's Life then filed this lawsuit, requesting a declaratory judgment that its revamped design did not infringe upon Renew Life's trademark.  Renew Life has now filed the present motion seeking preliminary injunctive relief.

### Standards for Injunctive Relief

To obtain injunctive relief, a party must establish that: (1) it will likely prevail on the merits of the litigation; (2) it will suffer irreparable injury unless an injunction is issued; (3) its threatened injury outweighs any harm the proposed injunction may cause to the opposing

5

party; and (4) an injunction, if issued, would not be adverse to the public interest.  See Elam Const., Inc. v. Regional Transp. Dist. 129 F.3d 1343, 1346-47 (10th Cir. 1997).

**Conclusions of Law**

Renew Life is not entitled to injunctive relief because (1) it is unlikely that it will prevail on the merits of its claims, (2) it has not established that irreparable harm will result if an injunction does not issue, (3) it has not established that the threatened injury outweighs the harm that would be inflicted on Nature's Life if an injunction is issued, and (4) it has failed to establish that an injunction would not be harmful to the public interest.  Each point will be discussed in turn.

**I.      Renew Life has failed to establish a substantial likelihood of success on the merits.**

Renew Life asserts two claims against Nature's Life: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1115; and (2) unfair competition/false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)).  To prevail on the merits of its claims, Renew Life has the burden of proving that there is a "likelihood of confusion" among the relevant class of consumers in the marketplace caused by Nature's Life use of its updated sun design (and word mark) and Renew Life's use of its own sun design and word mark. See King of the Mountain Sports, Inc. v Chrysler Corp., 185 F.3d 1084, 1089 (10th Cir. 1999) ("Likelihood of confusion forms the gravamen for a trademark infringement action.").

The "likelihood of confusion" test typically involves an analysis of the following six factors: (1) the degree of similarity between the marks, (2) the intent of the alleged infringer in adopting its mark, (3) the relation in use and the manner of marketing between the goods or services marketed by the competing parties, (4) the degree of care likely to be exercised by

6

purchasers, (5) evidence of actual confusion, and (6) the strength or weakness of the marks.

Heartsprings, Inc. v. Heartspring, Inc., 143 F.3d 550, 553-54 (10th Cir. 1998).

> Some of these factors may be more relevant than others, depending on the facts of each case. . . .  No one factor is dispositive, and the final determination of likelihood of confusion must be based on a consideration of all relevant factors.  In every case, however, the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks.

Id. at 554 (internal citations and quotation omitted).

**A. The similarity of the marks.**

In "both confusion of source and confusion of sponsorship cases, the similarity of the marks factor constitutes the heart of our analysis." King of the Mountain Sports,185 F.3d at 1090.  As explained by the Tenth Circuit:

> [M]arks may be confusingly similar if, as entities, they look or sound similar or convey the same idea or meaning.  We directed the district court to consider appearance, pronunciation of the words used, verbal translation of the pictures or designs involved, and suggestion.  These factors are not to be considered in isolation; they must be examined in the context of the marks as a whole as they are encountered by consumers in the marketplace.

Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 925 (10th Cir. 1986); see also Heartsprings,143 F.3d at 555 ("[W]e must consider the parties' trademarks in their entirety as they are experienced by consumers in the marketplace;"); Cosmetic Dermatology & Vein Centers of Downriver, P.C. v. New Faces Skin Care Centers, Ltd., 91 F. Supp. 2d 1045, 1053 (E.D. Mich. 2000) (noting that when marks consist of both words and symbols, the marks must be compared in their entireties).

According to the Tenth Circuit, "similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features."  First

Savings Bank, F.S.B. v. First Bank System, Inc., 101 F.3d 645, 653 (10th Cir. 1996) (citation and quotation omitted); see also MCCARTHY ON TRADEMARKS, § 23:41 (4th ed. 1998) ("A mark should not be dissected or split up into its component parts and each part then compared with corresponding parts of the conflicting mark to determine the likelihood of confusion.").

Here, Renew Life has attempted to isolate certain elements of the sun designs, including the presence of a yellow sun with extending rays, a two-word word mark, and the representation of a face within the sun, in an effort to establish the similarity of the marks. While Renew Life is correct that the two marks share certain commonalities, Renew Life ignores the different visual impression that Nature's Life's updated NATURE'S LIFE and sun logo mark creates *as a whole*, as compared against its own RENEW LIFE and sun logo mark.

To the extent that general similarities exist, many of these similarities existed in Nature's Life's *original* sun logo: a circular sun design, primarily yellow in color, sun rays extending outward, a human face drawn inside the sun, and a two-word word mark incorporated into the design. As Nature's Life is the senior user, both in regard to the sun design and the word mark, Renew Life cannot take advantage of any similarities that existed between its mark and Nature's Life's original mark.

Further, there are distinct differences between Nature's Life's updated sun design and word mark and that used by Renew Life.

| Nature's Life's Updated Sun Logo | Renew Life's Sun Logo |
|---|---|
| Prominent use of the NATURE'S LIFE word mark. | Prominent use of the RENEW LIFE word mark. |
| Semi-circular outer border or background, with a flat surface that forms the "bottom" of the design, in contrasting red color. | No border and no background whatsoever, no contrasting colors. |

| | |
|---|---|
| Sun rays that are *multi-colored*, containing bands of red, blue, and yellow, which are *triangular* in shape, with a *slight curve*. | Sun rays are *yellow only*, relatively *thin*, and *wavy*, like "hair flowing in a breeze." |
| Face is *male*, with eyes *open*, with *shading* around the eyebrows, nose, and lips | Face is *female*, her eyes are *closed*, with no shading on the face. |

      

Perhaps most significant and distinguishing, Nature's Life's logo features its NATURE'S LIFE house mark, which it has used since 1974, prominently along the bottom of the mark.  In contrast, Renew Life's design features its RENEW LIFE mark prominently along the bottom. The two marks are written in a different font and style.

Generally, when "composite marks" using designs and words are at issue, many courts conclude that the words dominate the mark (particularly when the words are prominent or reflect a known house mark) and no likelihood of confusion results.  See Herbko Intern., Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1165 (Fed. Cir. 2002) ("The words dominate the design feature."); General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987) (where plaintiff's mark is relatively weak and both parties also use their widely recognized house marks in a prominent manner, no likelihood of confusion will be found); CBS Inc. v. Morrow, 708 F.2d 1579, 1581-82 (Fed.Cir.1983) ("[I]n a composite mark comprising a design and words, the verbal portion of the mark is the one most likely to indicate the origin of the goods to which it is affixed."); Arnold,

9

Schwinn & Co. v. Evans Prods. Co., 302 F.2d 765, 767 (C.C.P.A. 1962) (composite marks held not confusingly similar where the differing word marks were dominant over similar background designs).[2]

Indeed, even when the dominant portion of the marks, the word marks, are *the same*, no likelihood of confusion will be found when sufficient differences in the designs exist.  King of the Mountain Sports, Inc., 185 F.3d at 1090 (upholding summary judgment finding no infringement in a composite mark case where the words were dominant and identical, but the design was different).

Here, the parties' prominent use of their respective word marks, NATURE'S LIFE versus RENEW LIFE, renders the words the dominant portion of the marks as a whole and weighs against a conclusion that the marks are confusingly similar.  Coupled with that critical distinction are the other dissimilarities identified.  These differences, when their total effect is considered, weigh against the conclusion that the marks are so similar as to support an infringement claim.

**B.  Nature's Life did not intend to cause confusion by updating its mark.**

Renew Life's argument that Nature's Life possessed "an intent to cause confusion" in updating its thirty-year-old sun logo mark is not supported by the record.  Other than Nature's Life prior knowledge of Renew Life's mark, which is not disputed, Renew Life has offered no

---

[2]  See also Pristine Indus., Inc. v. Hallmark Cards, Inc., 753 F. Supp. 140, 145-46 (S.D.N.Y. 1990) (use of defendant's own well-known house mark--HALLMARK for greeting cards--in connection with the disputed mark is a strong factor indicating that confusion is unlikely); Worthington Foods, Inc. v. Kellogg Co., 732 F. Supp. 1417, 1440 (S.D. Ohio 1990) (holding the presence of a word to be the dominant part of a composite mark consisting of a heart-shaped design and the word HEARTWISE, because "it is the word segment which conveys the suggestion of healthiness which the plaintiff intends.  The heart-shaped design merely augments the message conveyed by the word.").

evidence that Nature's Life intended to derive a benefit from the reputation or goodwill of Renew Life at the time it updated its logo.  Mere knowledge of the existence of another mark does not necessarily result in a presumption of bad faith.  See Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 745-46 (2d Cir. 1998) (although defendant had knowledge of plaintiff's mark, that fact alone was insufficient to infer bad faith).

Additionally, the evidence supports the conclusion that Nature's Life only updated its logo after receiving repeated requests from retailers that it do so.  Nature's Life is a long-time participant in the nutritional supplement market and has enjoyed a considerable amount of success in that market.  Renew Life's assertion that Nature's Life revised its logo in a bad faith effort to receive the benefit of Renew Life's goodwill is not supported by the record and, therefore, consideration of this factor indicates that Renew Life is not likely to succeed on the merits of its claims.

**C. An analysis of the similarities of the parties' products and markets does not weigh in favor of either party**.

While it is true that both Nature's Life and Renew Life sell "nutritional supplement" products generally, Renew Life's products are focused exclusively on "digestive aid" products, a specialty subclass of nutritional supplements.  In contrast, Nature's Life sells a broad mix of vitamins, mineral, and herbal supplements.  On the whole, while the parties both operate within the same *general* class of "nutritional supplements," there are important distinctions in (a) the products sold by each, and (b) the marketing strategies and methods used by each, such that the impact of this factor is diminished.  Consequently, consideration of this factor does not weigh in favor of either party.

11

**D. The degree of care exercised by consumers in the relevant market does not weigh in favor of either party.**

The products Nature's Life's sells under its sun logo mark are available *only* in health and natural food retail outlets; they are *not* sold in "mass market" retail stores.  Renew Life's products are similarly restricted to "health food" outlets.

The parties dispute whether consumers in the relevant market exercise a great deal of care in selecting products.  According to Nature's Life, consumers who choose to shop in health food stores are more concerned with the types and quality of foods and supplements they ingest; indeed the entire health food market is premised on promoting the superior quality, purity, and health benefits of such products.  Nature's Life also argues that products sold at health food stores are typically more expensive and subjected to more stringent manufacturing or quality requirements (e.g., organic, purity levels, etc.) than comparable products available in the mass market retail channels.  As a result, Nature's Life argues that health food consumers are more likely to read product labels carefully in order to ascertain or verify the amount or purity of its ingredients.

Renew Life points out, however, that the products are not particularly expensive. According to Renew Life, it is not likely that consumers take a great deal of care when determining which product to purchase.  Taking the position of both parties into consideration, the court determines that this factor does not weigh in either party's favor.

**E.  Evidence of confusion is inapplicable to the resolution of the present motion.**

Nature's Life correctly points out that no evidence of actual confusion has been presented in this case.  But, because Nature's Life has not yet started to sell products using its updated sun design, this factor is inapplicable.

**F.  Renew Life's logo is weak.**

The Tenth Circuit has noted two aspects of strength: (1) conceptual strength, which refers to the location of the mark on a spectrum of distinctiveness (e.g., generic, descriptive, suggestive, arbitrary, or fanciful); and (2) commercial strength, which refers to the value that the marketplace places upon the mark.  <u>King of the Mountain Sports</u>, 185 F.3d at 1093 (internal citation and quotation omitted).

In this case, the marks are designs, not word marks, which are ill-suited for the "conceptual strength" analysis, since designs (unlike words) do not have a "meaning" that can be applied to the goods and classified as "generic," descriptive," or suggestive."  As a result, the court focuses on the "commercial strength" of Renew Life's sun logo, paying particular attention to whether Renew Life's sun design enjoys a high degree of consumer recognition.

There is no persuasive evidence regarding how consumers perceive its sun logo.  Renew Life has not provided any evidence as to the amount of its product sales, or how extensive its sales have been (either in terms of geographic range or gross sales numbers).  Instead, Renew Life relies solely on its vague assertion that it has spent "millions" of dollars on advertising, yet provides no information as to *when* this advertising money was spent, *where* it was spent, or on *what* it was spent.

Further, the record illustrates that Renew Life itself has contended that markets are

13

saturated with sun designs and that, therefore, such designs are properly considered weak marks. Specifically, in 2000, when Renew Life was defending its right to use a sun logo in light of Nature's Life twenty-year prior use of a sun logo, Renew Life submitted twenty-two pages of PTO records, showing numerous third-party uses of sun logos, sun logos with faces, and sun logos used in connection with nutritional supplement products.  Renew Life's current attempt to characterize its sun logo mark as "strong" is at odds with its own arguments and representations made in 2000, in which Renew Life emphasized:

> The effect of the widespread use of images of the sun has reduced or substantially eliminated the public's reliance on the image of the sun as a source indicator.  The large number of marks which incorporate images of the sun by necessity requires the public to look to other features in such marks as the source-identifying aspects of the marks.

(Letter to Renew Life from Nature's Life, July 7, 2000  (Exhibit 6 to Reidel Decl. at 1).)

As a consequence of the extensive third-party use of sun logos, Renew Life's use of a sun design has resulted in a weak mark, as Renew Life itself recognized and admitted in 2000.  When a mark is weak, or when "the common feature of the two marks is weak, the dissimilarities weigh heavily against any likelihood of confusion," such that even "minor alterations may effectively negate any confusing similarity between the two marks."  First Savings Bank, 101 F.3d at 655. Consequently, the weakness of Renew Life's sun logo mark weighs heavily against a likelihood of confusion, all but negating its claims of infringement in view of the differences between the designs and use of house marks as discussed above.

While it may be that Nature's Life's mark, through its most recent evolution, became more similar to Renew Life's mark, "similar" does not equal "confusingly similar."  Considering the six factors discussed above, the court concludes that Renew Life has failed to establish that

14

Nature's Life's mark is confusingly similar to its own and it is therefore unlikely to succeed on the merits of its claims against Nature's Life.

**II.     Renew Life has failed to establish that it will suffer irreparable harm absent the issuance of a preliminary injunction.**

While some courts have "presumed" that irreparable harm exists in a trademark case, any such presumption is negated when the trademark owner delays in seeking relief.  See GTE Corp. v Williams, 731 F.2d 676, 678 (10th Cir. 1984) ("Delay in seeking relief … undercuts any presumption that infringement alone has caused irreparable harm *pendente lite*; therefore, such delay may justify denial of a preliminary injunction for trademark infringement."); Tough Traveller, Ltd. v Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) ("Though such delay may not warrant the denial of ultimate relief, it may, standing alone, … preclude the granting of preliminary injunctive relief." (internal quotation omitted)).

In the present case, Renew Life learned of Nature's Life's updated design in January 2005, yet filed no lawsuit and sat on a proposed settlement agreement for several months with no action.  Renew Life then decided it needed to invoke the emergency provisions of Fed. R. Civ. P. 65 by filing the present motion in August 2005--nine months later.  Such inaction severely undercuts Renew Life's claim that it is suffering immediate and irreparable harm as a result of Nature's Life updated logo.

 In addition to Renew Life's delay in seeking relief, the court's conclusion that Renew Life is unlikely to succeed in establishing that Nature's Life's updated logo infringes upon Renew Life's trademark significantly weakens the force of Renew Life's claim of irreparable harm caused by impermissible action on the part of Nature's Life.  Given the above, the court is

15

convinced that Renew Life has failed to establish that it will suffer irreparable harms absent the issuance of an injunction.

**III.     The balancing of harms weighs in favor of denying injunctive relief.**

It appears from the record that Nature's Life would suffer some harm if the requested injunction issued.  Nature's Life's old design has been phased out of print, and all new products are in the process of being re-labeled and packaged with the updated sun design.  The issuance of an injunction would cause Nature's Life to suffer significant disruption and expense.  Further, as discussed, Renew Life has failed to establish the extent of the potential harm it could suffer due to Nature's Life's use of its updated sun logo.  An analysis of the relative harms to be endured as a result of the outcome of the present motion weighs in favor of denying preliminary relief.

**IV.     The public interest.**

While the public possesses an interest in not being confused, it also has an interest in free competition in the marketplace, as well as an interest in freedom from meritless litigation that ultimately results in higher costs to consumers.  Accordingly, this factor does not favor either party.

<u>**Conclusion**</u>

Renew Life has failed to establish that it is entitled to injunctive relief because (1) it is unlikely that it will prevail on the merits of its claims, (2) it has not established that irreparable harm will result if an injunction does not issue, (3) it has not established that the threatened injury outweighs the harm that would be inflicted on Nature's Life if an injunction is issued, and (4) it has failed to establish that an injunction would not be harmful to the public interest.  Therefore, for the reasons discussed above, Renew Life's motion is DENIED.

SO ORDERED this 9th day of January, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge